IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CORNITA M. APACHITO,**

    **Plaintiff,**

**v.**                                                                                                     No. 17-cv-0504 JCH/SMV

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 33] and Memorandum Brief in Support [Doc. 34] ("Motion"), filed on April 23, 2018. The Commissioner responded on June 7, 2018. [Doc. 36]. Plaintiff replied on July 17, 2018. [Doc. 37]. The Honorable Judith C. Herrera, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 19]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that, considering the entire administrative record, the Administrative Law Judge's ("ALJ") findings at step three are not supported by substantial evidence. Accordingly, I recommend that the Motion be granted and that the case be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481. The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was before the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to 20 C.F.R. § 416.1470(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858. Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096. Accordingly, here, the Court reviews the ALJ's decision considering the entire record, including the evidence submitted to the Appeals Council. *See* Tr. 373–74, 558–60.

F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* either (3) her impairment(s) either meet or equal one of

the "Listings"[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for supplemental security income on November 8, 2012. Tr. 15. She alleged a disability-onset date of July 28, 2011. *Id.* Her claim was denied initially and on reconsideration. *Id.* ALJ Frederick Upshall, Jr., held the first of three hearings in Albuquerque, New Mexico, on June 25, 2014. Tr. 15, 35–46. Plaintiff appeared in person and pro se. *Id.* The hearing was continued to allow for the submission of missing medical records and to allow Plaintiff to find representation. *Id.* ALJ Upshall held the second hearing in Albuquerque on December 9, 2014. Tr. 15, 47–59. Plaintiff appeared in person with Ione Gutierrez, an attorney. Tr. 47. The second hearing, however, was also postponed to allow for the submission of missing medical records. Tr. 58–59. ALJ Upshall held the third and final hearing in Albuquerque on June 2, 2015. Tr. 15, 60–83. Plaintiff appeared in person with Zachary Green, an attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE") Patricia McLaughlin. *Id.*

The ALJ issued an unfavorable decision on September 15, 2015. Tr. 27. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2012. Tr. 17. At step two, the ALJ found that Plaintiff suffered from the following severe

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

impairments: rheumatoid arthritis, diabetes mellitus, morbid obesity, osteoarthritis, degenerative joint disease, depression, and borderline intellectual functioning. *Id.*

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 17–21. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 21–25. The ALJ found that Plaintiff had

> the [RFC] to perform light work as defined in 20 [C.F.R. §] 416.967(b) with the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with normal breaks; and sit for six hours out of an eight-hour workday with normal breaks. Pushing and pulling is limited by these exertional limitations. [Plaintiff] can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl. [Plaintiff] can frequently reach in all directions, including overhead, with the bilateral upper extremities. [Plaintiff] can perform frequent handling and fingering with the bilateral upper extremities. [Plaintiff] is limited to one- or two-step tasks in an environment free of fast-past [sic] production requirements involving only simple, work-related decisions with few workplace changes. She can have no interaction with the public and occasional interaction with coworkers. The claimant can perform jobs with a reasoning level of one as per the Dictionary of Occupational Titles (DOT).

Tr. 21.

At step four the ALJ found that Plaintiff had no past relevant work. Tr. 25. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 25–27. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff

requested review from the Appeals Council, but that request was denied on December 1, 2016. Tr. 1–4. Plaintiff filed the instant action on April 28, 2017.[3] [Doc. 1].

## Analysis

At the time the ALJ issued his decision, Listing 12.05(C), for intellectual disability,[4] read as follows:

> 12.05 *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

Listing 12.05(C), 20 C.F.R. pt. 404, subpt. P, app. 1 (2016). In other words, to meet Listing 12.05(C), a claimant must show that she has (1) a qualifying IQ score, and (2) an additional severe impairment. Beyond the two requirements described in subparagraph C, Plaintiff must also meet the introductory paragraph of Listing 12.05, which is often referred to as the "capsule definition."

In this case, the ALJ found that Plaintiff met the two requirements described in subparagraph C but did not meet the capsule definition:

---

[3] The Court previously determined that the action was timely filed. *See* [Doc. 22] at 10 (magistrate judge's recommendation; [Doc. 23] (district judge's order adopting the recommendation).
[4] This Listing was amended effective January 17, 2017. However, because the ALJ's decision was issued in 2015, prior to the effective date of the amendment, this Court applies the pre-2017 version of the Listing. *See* 81 Fed. Reg. 66137 n.1 (Sept. 26, 2016) (to be codified at 20 C.F.R. §§ 404, 416).

> With regards to "paragraph C" criteria of listing 12.05, while [Plaintiff]'s full scale IQ exceeds the requirement that the individual have a valid verbal, performance, or full scale IQ of 60 through 70, [Plaintiff]'s verbal comprehension score of 61 does indeed fulfill that aspect of the "C" requirements. Further, the record does support a finding that [Plaintiff]'s impairments do impose an additional and significant work-related limitation of function. However, 12.05 requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning *initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age of 22.*" The record fails to contain such evidence.

Tr. 20–21 (italics in ALJ's decision). The use of italics by the ALJ indicates the core of his finding. He found that the record contained no evidence that Plaintiff's intellectual disability manifested itself during Plaintiff's developmental period, i.e., before the age of 22. *Id.* I refer to this as the "temporal requirement."

Plaintiff argues that the record, in fact, does contain evidence that would meet the temporal requirement, and therefore, the case should be remanded. [Doc. 34] at 18. Specifically, Plaintiff points to the Dr. Padilla's supplemental report November 15, 2015.[5] *Id.* (citing Tr. 558–60); [Doc. 37] at 4. Plaintiff argues that the supplemental report makes "clear that based upon [Dr. Padilla's] testing of Ms. Apachito and her very poor performance in school, it would have been expected for the intellectual deficits to have been in place before age 22." [Doc. 34] at 18 (citing Tr. 559). Plaintiff also points to a document signed by Steven K. Baum,

---

[5] Plaintiff argues that Dr. Padilla's supplemental report "was given no consideration" by the Appeals Council. [Doc. 37]. I disagree. The Appeals Council explicitly stated that it had considered the supplemental report. Tr. 2, 4. The Appeals Council also made it part of the record. *Id.* For these reasons, I find that the Appeals Council considered the supplemental report. If it had not considered the supplemental report, remand would be required for its consideration in the first instance. *See Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004) ("[T]he Appeals Council, which has the responsibility to determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record.") (internal quotation marks omitted). However, because the Appeals Council considered the supplemental report, the Court must review the ALJ's final decision in light of the entire record, including the evidence submitted only to the Appeal Council, namely Dr. Padilla's supplemental report and Dr. Baum's document. *See* Tr. 2, 4, 373–74, 558–60.

7

Ph.D. *Id.* at 18, 13 (citing Tr. 373); [Doc. 37] at 3. Plaintiff describes Dr. Baum's document as "cited research on IQ development over the past 50 years that demonstrated intellectual deficits before age 22 would show up in testing years later." [Doc. 34] at 18 (citing Tr. 373); *see id.* at 13; [Doc. 37] at 3. Finally, Plaintiff argues that her valid verbal comprehension score of 61 is sufficient to meet the temporal requirement of the Listing even though she was 41 years old at the time of the test. *See* [Doc. 34] at 18; [Doc. 37] at 3–4. As support, Plaintiff relies on Program Operations Manual System ("POMS"), which explains that "IQ scores tend to stabilize by the age of 16. Regardless of the claimant's age at adjudication, reliable IQ testing obtained at age 16 or older is valid to support the IQ findings required under listing 12.05." POMS DI § 24515.020(C)(5)(a).

The Court agrees with Plaintiff that remand is warranted. The ALJ found that Plaintiff did not meet Listing 12.05(C) because the "record fail[ed] to contain . . . evidence [that would meet the temporal requirement]." Tr. 21. This was the only reason given by the ALJ. The ALJ found that the other requirements of Listing 12.05(C) were met. Tr. 20–21. The ALJ's finding (that the record contains no evidence that could meet the temporal requirement) is not supported by substantial evidence because Dr. Padilla's supplemental report could satisfy the temporal requirement. In his supplemental report, Dr. Padilla was asked whether Plaintiff's "intellectual deficiencies [were] the kind [that Dr. Padilla] would expect to have been established at a developmental age (i[.]e.[, d]uring childhood, before the age of 22, etc.)[.]" Tr. 559. Dr. Padilla responded "Yes." *Id.* He explained that Plaintiff "could recall struggling in the classroom and dropped out of school after 8th grade due to pregnancy." *Id.* A fact-finder could be persuaded by Dr. Padilla's supplemental report and rely on it to find that Plaintiff meets the temporal

8

requirement of Listing 12.05(C). Accordingly, the critical finding here—that the record contained no evidence of the temporal requirement—is not supported by substantial evidence.

Importantly, Defendant does not argue otherwise. *See* [Doc. 36]. The most she offers is an acknowledgement that Dr. Padilla submitted a supplemental report to the Appeals Council, the report was made part of the record, and the Appeals Council found that it did not provide a basis for changing the ALJ's decision. [Doc. 36] at 6 n.5 (citing Tr. 1–3, 558–60). Otherwise, she offers nothing opposing Plaintiff's argument that the supplemental report could satisfy the temporal requirement. *See* [Doc. 36].

The argument that Defendant offers instead does not change the result. Rather than arguing about the temporal requirement, Defendant heads in a new direction. She interprets the ALJ's decision as based on lack of evidence of "deficits in adaptive functioning." [Doc. 36] at 11–12. Defendant does not argue about the temporal requirement; she focuses on deficits in adaptive functioning. *Id.* For example, Defendant defines "adaptive functioning." *Id.* at 11. She argues that evidence of deficits in adaptive functioning is important because IQ scores have a margin of error. *Id.* at 11–12. She then cites to evidence that she believes affirmatively shows that Plaintiff does not have the requisite deficits in adaptive functioning, such as Plaintiff's apparently having completed written forms, evidencing that she could read and write with proper spelling and in a manner that made sense. *Id.* at 12 (citing Tr. 297–98, 318–25). For at least two reasons, this argument does not carry water.

First, the ALJ's decision, on its face, indicates that the ALJ did not find that Plaintiff lacked deficits in adaptive functioning. Tr. 20–21. Rather, the language and font indicates that he found that there was no evidence that could meet the temporal requirement:

> [Listing] 12.05 requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning *initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age of 22."* The record fails to contain such evidence.

Tr. 20–21 (italics in ALJ's decision). The relevant finding is about the temporal requirement, not deficits in adaptive functioning. Moreover, as to the finding at issue, the ALJ found that the record "fail[ed] to contain such evidence." *Id.* The ALJ did not find that the evidence was present but cut against Plaintiff, which is what Defendant argues. *See* [Doc. 37] at 12.

The precise meaning of the ALJ's finding is critical here because this Court may only review the decision based on the reasoning provided by the ALJ himself. This Court may not supply a missing finding. To do so would be an impermissible post hoc rationalization. *See Havenar v. Astrue*, 438 F. App'x 696, 699 (10th Cir. 2011) (rejecting the Commissioner's argument that the plaintiff could not meet the capsule definition of Listing 12.05(C) because "the ALJ never made any findings regarding the capsule definition, and it would be beyond the scope of appellate review to make such a finding in the first instance. Indeed, any such finding would be an impermissible post-hoc justification for the ALJ's deficient explanation."); *Peck v. Barnhart*, 214 F. App'x 730, 736 (10th Cir. 2006) (rejecting the Commissioner's argument that the plaintiff failed to meet the capsule definition because the ALJ did not make that finding himself in the first instance).

Second, it is not at all clear that evidence of "deficits in adaptive functioning" is required above and beyond the requirements listed is subparagraph C. Therefore, even if the ALJ had rejected Listing 12.05(C) on this basis—which he did not—I am not convinced the rejection would have been proper. *See Barnes v. Barnhart*, 116 F. App'x 934, 938–40 (10th Cir. 2004)

(holding that the requirements for meeting the capsule definition are not clear, and to the extent that evidence of "deficits in adaptive functioning" is required—above and beyond the requirements of subparagraph C—the ALJ is required to choose and apply one "of the measurement methods recognized and endorsed by [one of] the [four major] professional organizations" dealing with mental retardation) (quoting 67 Fed. Reg. at 20,022.); *Wall v. Astrue*, 561 F.3d 1048, 1073–74 (10th Cir. 2009) (Holloway, J., dissenting) (applying *Barnes* to opine that remand should be required to allow the ALJ to explain which of the four standards he applied vis-a-vis deficits in adaptive functioning); *see also, Crane v. Astrue*, 369 F. App'x 915, 921 (10th Cir. 2010) (interpreting the capsule definition as a temporal requirement rather than a requirement for evidence of deficits in adaptive functioning (quoting *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009)).

## Conclusion

Considering the entire administrative record, the ALJ's finding—that the record contains no evidence that could meet the temporal requirement of Listing 12.05(C)—is not supported by substantial evidence because Dr. Padilla's supplemental report could satisfy the temporal requirement. Remand is warranted for reconsideration of Listing 12.05(C). Passing on Plaintiff's other alleged errors is not necessary at this time because proper consideration of Listing 12.05(C) may render them moot.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [Doc. 33] be **GRANTED**, the Commissioner's final decision be reversed, and this case be remanded for further proceedings in accordance with this opinion.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**